United States Courts
Southern District of Texas
**FILED**

**IN THE UNITED STATES DISTRICT COURT**

DEC 23 2024

**FOR THE SOUTHERN DISTRICT OF TEXAS**

**HOUSTON DIVISION**

Nathan Ochsner, Clerk of Court

| | | |
|---|---|---|
| India Mitchell Davis | § | |
| *Plaintiff,* | § | |
| | § | Civil Action No. **24 CV 5056** |
| v. | § | |
| | § | **Jury Trial Demanded** |
| Spring Independent School District | § | |
| *Defendants.* | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:**

Plaintiff India Davis ("Plaintiff") files this Original Petition against Defendant Spring Independent School District ("Defendant" or "Spring ISD") and alleges as follows:

**THE PARTIES**

1.      Plaintiff India Davis is an individual citizen of the United States of America residing at 13906 Eastmoore Court, Houston, TX 77014.

2.      The last three digits of Mrs. Davis' Texas Driver's License are 849. The last three digits of Mrs. Davis' Social Security Number are 697.

3.      Defendant Spring ISD is an independent school district located in Harris County at 16717 Ella Blvd. Houston, Texas 77090.

**JURISDICTION AND VENUE**

4.      This Court has jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. § 1331, as Plaintiff's causes of action arise under federal and state statutes: Title VII of the Civil Rights Act of 1964, The Americans with Disabilities Act ("ADA"), 42 U.S.C § 1981,

42 U.S.C § 1983, Title IX of the Education Amendments of 1972, and Chapter 21 of the Texas Labor Code.

5.     Venue is proper in the Southern District of Texas, Houston Division, pursuant 28 U.S.C. § 1391(b)(2) because all or a substantial part of the events or omissions giving rise to the claim occurred in this judicial district in Harris County, Texas.

## FACTUAL BACKGROUND

6.     Plaintiff was originally employed as a teacher by Defendant from 2010-2016. Between 2014 and 2016, Plaintiff was reassigned to different grade levels during the school year. The abrupt changes in job reassignment adversely affected Plaintiff's health.

7.     In 2016, Plaintiff was diagnosed with depression because of a job reassignment during the 2015-2016 school year. Plaintiff's primary care physician recommended that Plaintiff resign from Plaintiff's job as an elementary school teacher due to the decline in Plaintiff's health. Plaintiff resigned from Defendant's school district in June 2016 as advised by Plaintiff's doctor.

8.     Defendant rehired Plaintiff in August 2021 as a second-grade self-contained elementary teacher.   During Plaintiff's employment with Defendant from 2021-2024, Plaintiff won ESL Teacher of the Year (2021-2022), Super Amplify ELAR Teacher (2021-2022), TIA (Teacher Incentive Allotment) Exemplary Designated Teacher- Top 20% (2022-2023), and pending TIA Master Designated Texas Teacher- Top 5% (2023-2024). A TIA Master Designation is the highest Texas Teacher designation and represents the Top 5% of all Texas Public School Teachers.

9.     During the 2022-2023 and 2023-2024 school years, Plaintiff achieved Master Designated Texas Teacher Student Growth Scores of 70% or higher but did not receive a Master Designation

for the 2022-2023 school year due to unfair supervisor appraisal scores and last-minute changes to Plaintiff's classroom roster.

10.     Plaintiff's achievements came at the expense of Plaintiff's health as it started to regress during the 2022-2023 school year due to numerous job stressors.

11.     Plaintiff's medical diagnoses include Depression, Adjustment Disorder, Generalized Anxiety, Attention Deficit Hyperactivity Disorder (ADHD), Post Traumatic Stress Disorder (PTSD), Panic Disorder, and Emotional Eating-Binge Eating Disorder (BED).

12.     Symptoms of Plaintiff's mental health diagnoses can limit Plaintiff's major life activities such as eating, caring for oneself, learning, reading, concentrating, thinking, and communicating. Symptoms can also limit Plaintiff's executive function skills of planning, organizing, time management, working memory, flexibility, task initiation, emotional control, self-regulation, and response inhibition.

13.     During the 2022-2023 school year, Plaintiff continuously sought remedies for teacher planning and preparation time. Teachers were not receiving their allotted minutes of planning and preparation time within two weeks, as stated in TEC 21.404 and Spring ISD's Employee Handbook, and planning and preparation time is crucial for Plaintiff to regulate symptoms of Plaintiff's mental health diagnoses.

14.     On October 25, 2022, Plaintiff experienced disparate treatment based on race while participating in the protected activity of teacher planning and preparation. Campus administrators cannot schedule meetings during teacher planning and preparation time unless teachers have received more than the minutes allotted per TEC 21.404. Plaintiff did not attend a PLC meeting but attempted to notify the administrator who was facilitating the meeting.

15.    Due to Plaintiff's absence at the meeting, Plaintiff was denied information because the administrator facilitating the meeting, Mr. Rodriguez, a white-Hispanic male, told Plaintiff's second-grade team members to exclude Plaintiff by not telling Plaintiff the information given in the meeting.

16.    Plaintiff was told to meet Mr. Rodriguez after school to get the information. Mr. Rodriguez did not have time to provide Plaintiff with the information when she arrived at the PLC meeting room after school but had time to meet with two white-Hispanic female teachers as Plaintiff waited patiently outside the PLC meeting room. Mr. Rodriguez saw and knew that Plaintiff was waiting to receive the information.

17.    On the contrary, a white Hispanic male colleague on the second-grade team who also missed the meeting was given the information during school hours.

18.    On November 1, 2022, Plaintiff was subjected to workplace bullying, a hostile environment, and reprimanded by Mr. Rodriguez for not following a protocol based on the information Plaintiff did not receive on October 25, 2022.

19.    During March and February 2023, Plaintiff was subjected to racial harassment that resulted in a hostile, offensive, and intimidating work environment. Plaintiff's direct supervisor, Principal Womack, a black African American woman, failed to promptly correct a Black History Month project that Plaintiff found to be offensive to her race and culture.

20.    Plaintiff told Principal Womack it appeared to be a project created by the bilingual PreK class based on the student and teacher names on the projects and that they may not be aware that it is offensive to Black African Descendants of Slaves (ADOS) Americans. Principal Womack

dismissed Plaintiff's complaint and said Plaintiff's actions could also be considered racist and that Plaintiff's behavior could be detrimental to the school.

21.    Plaintiff's supervisor, Principal Womack, did not take corrective action against the offenders, as she told Plaintiff in an email on February 13, 2023. Instead, Principal Womack allowed the offensive imagery to be displayed for a prolonged time, eventually resulting in conflict between Plaintiff and the PreK teachers who created the project.

22.    March 8, 2023- During the Black History Month Expo, a colleague, Mrs. Quincey, who also found the project offensive, brought it to Plaintiff's attention that the offensive project was on display at the expo. When asked why the offensive was still allowed to be displayed, the PreK teachers said Principal Womack never spoke with them about the project and kept the project displayed.

23.    During the Black History Month expo, Plaintiff witnessed and documented the older 5th-grade students pointing and laughing at the display. Plaintiff was offended that the students mocked Black History during the expo instead of it.

24.    Plaintiff experienced many adverse employment actions after submitting her complaint about the offensive Black History Month Project display.

25.    On March 10, 2023, two days after the Black History Month expo and encounter with the PreK team, Principal Womack scheduled a meeting to address Plaintiff's professional demeanor and Campus-District expectations. Principal Womack stated Plaintiff's colleagues were having difficulty working with Plaintiff.

26.    During the meeting, Principal Womack said the PreK team made a complaint about Plaintiff's behavior at the Black History Month Expo, accusing Plaintiff of being aggressive, calling them racists, and threatening them with lawsuits at the expo, which was untrue.

27.    Principal Womack repeatedly denied telling Plaintiff she spoke with the PreK team and stated she never agreed with Plaintiff's opinion about the project. Plaintiff showed Principal Womack the email she sent on February 13, 2023, stating she remedied the situation. Principal Womack then stated Plaintiff misinterpreted the email.

28.    Plaintiff was verbally reprimanded and told Plaintiff's appraisals could be affected if Plaintiff did not correct her behavior.

29.    March 22, 2023- The unfair treatment of Plaintiff increased upon returning to school after the break. After the March 10, 2023 meeting, Plaintiff's workroom orders for copies began to be denied. Plaintiff received written messages on Plaintiff's workroom orders for copies stating Plaintiff needed to see administrators for approval or that her orders were in Principal Womack's box. This was uncommon and hadn't happened to Plaintiff during her years of employment at that campus. Plaintiff was the only teacher affected by this at the time.

30.    The increased monitoring affected Plaintiff and triggered Plaintiff's PTSD symptoms because Plaintiff has been subjected to stalking and hacking for years and can become hypervigilant if Plaintiff feels someone is closely monitoring her or trying to access Plaintiff's personal information or belongings.

31.    As a result, Plaintiff purchased her own printers and paper after Principal Womack denied her workroom orders to differentiate instruction for her students.

32.    Although Plaintiff is teaching in a different district at a new school, Plaintiff still prefers to print using her personal printers because of this incident.

33.    At the start of April 2023, Principal Womack adjusted Plaintiff's classroom roster and summative teacher evaluation, adversely affecting Plaintiff's Teacher Incentive Allotment. Plaintiff would have received an $18,000 TIA bonus for the next five years as a Master Teacher instead of the $9,900 bonus Plaintiff currently receives as an Exemplary Teacher if the changes never occurred.

34.    May 31, 2023- Principal Womack informed Plaintiff that she would be reassigned to the 3rd grade with her 2nd grade class the next school year.

35.    Plaintiff requested to stay in 2nd grade due to Plaintiff's mental health diagnoses and history of grade level changes adversely affecting Plaintiff's health, especially standardized testing grade levels.

36.    Plaintiff informed Principal Womack that she was experiencing more stress and mental health struggles due to someone recently hacking her personal and work devices and deleting a project Plaintiff created for her students as an end-of-school-year gift.

37.    June 2, 2023- Principal Womack confirmed she could not accommodate Plaintiff's request to stay in 2nd grade. Plaintiff requested to transfer to a different campus and Principal Womack told Plaintiff it was too late because the intra-district transfer window was closed. Plaintiff asked about resigning, and Principal Womack told Plaintiff she would write her a letter of recommendation.

38.    June 5, 2023- Principal Womack sent Plaintiff an email finalizing her decision to reassign Plaintiff to third-grade for the 2023-2024 school year, Principal Womack also mentioned

allowing Plaintiff to stay in her current classroom location to assist with the transition or extending classroom access to prepare for the move.

39.     June 6, 2023- Plaintiff emailed Spring ISD Human resources directors and managers requesting an intra-district transfer and to inform them about the hacking Plaintiff recently experienced that compromised a device assigned by the district. Plaintiff did not receive a reply from Spring ISD's Human Resources department.

40.     June 12, 2023- Plaintiff filed a level 1 grievance with Spring ISD's Human Resources Department as her AFT union representatives advised.

41.     June 14, 2023- Spring ISD's Title IX coordinator, Ms. Kayla Randolph, dismissed Plaintiff's Level 1 grievance and told Plaintiff to follow district reasonable accommodation request protocol.

42.     Plaintiff was unaware of Defendant's Reasonable Accommodation procedures because Defendant removed the policy from the 2022-2023 Employee Handbook and Defendant's website. Plaintiff found Defendant's Reasonable Accommodation procedures in Defendant's 2019-2020 Employee Handbook.

43.     Plaintiff emailed Mr. Williams, as directed by Ms. Randolph, to start the reasonable accommodation interactive process with Spring ISD for Plaintiff's request to remain a second-grade teacher.

44.     June 19, 2023- Plaintiff's reasonable accommodation request with medical documentation to remain a second-grade teacher was denied by Spring ISD because it would be ineffective.

45.    July 6, 2023- Mr. Williams told Plaintiff she could not file a Level 2 Grievance nor appeal the denial because reasonable accommodations are only handled by the reasonable accommodation committee that finalized the request denial.

46.    Plaintiff knew of a qualified ESL teacher Principal Womack asked to move to third grade in April 2023. The campus had a qualified candidate to fill the vacant third-grade position, which would have allowed Plaintiff to stay in second grade.

47.    July 10, 2023- Plaintiff asked Principal Womack if she could stay in her 2022-2023 classroom location, as Principal Womack mentioned in her email on June 5, 2023, especially because the natural sunlight from the windows alleviates symptoms of depression.

48.    Plaintiff's new classroom was smaller and did not have windows. Principal Womack rescinded her offer and told Plaintiff to submit another reasonable accommodation request if she wanted her old classroom.

49.    Principal Womack said she denied Plaintiff's request because third-grade teachers needed to be in the same hallway for the best interest of the students. Plaintiff's classroom was directly across the hall from the third-grade classroom Plaintiff was forced to move to.

50.    During the 2023-2024 school year and previous school years, Principal Womack accommodated white-Caucasian and white-Hispanic teachers with classrooms of their choice and classrooms on hallways separate from their grade-level teams despite having available classrooms on their grade-level hallways.

51.    July 17, 2023- Plaintiff submitted another reasonable accommodation request to Spring ISD through Mr. Williams to remain in the same classroom because natural lighting alleviates symptoms of depression.

52.    July 28, 2023- Plaintiff's reasonable accommodation request was denied, but an alternative was approved.

53.    Plaintiff's alternative was to use a lamp, but all teachers were allowed lamps in their classrooms. Therefore, it was not accommodation.

54.    Plaintiff purchased additional lighting and light therapy sun lamps for the new classroom.

55.    July 19, 2024- Plaintiff needed additional time to move into her new classroom because of her medical diagnosis and worked the remaining days of summer vacation.

56.    Plaintiff was limited in how much she could do because Ms. Perez, a white-Hispanic teacher who occupied Plaintiff's new classroom the previous school year, still had a lot of her belongings in the classroom Plaintiff was moving into.

57.    Plaintiff was told not to touch or move Ms. Perez's things and to wait for Ms. Perez to move her stuff to her new classroom. Plaintiff respected the request as she would not want someone else moving her personal belongings.

58.    August 1, 2023- Plaintiff arrived at the school to find her personal belongings in her old classroom on top of cabinets and desks around the room.

59.    Principal Womack had unlocked the cabinets in Plaintiff's old classroom and allowed Mrs. Milian, a white Hispanic teacher, to remove Plaintiff's personal teaching materials to make room for Mrs. Milian to move into the classroom.

60.    Mrs. Milian told Plaintiff that Principal Womack unlocked the cabinets because Mrs. Milian had a medical excuse, and it was the only day her daughter could help her move before the school year started.

61.    Administrators were aware of Plaintiff's requests for medical reasons but did not allow Plaintiff to touch or move Ms. Perez's (white Hispanic teacher) belongings but allowed Mrs. Milian (white Hispanic teacher) to touch and move Plaintiff's personal teaching materials.

62.    August 1, 2023- Principal Womack and the school secretary, Mrs. Solano, called Ms. Perez and asked when she could move her things so that Plaintiff would have room to move in.

63.    Plaintiff did not receive a courtesy call as Mrs. Perez did before Principal Womack unlocked her cabinets and allowed Mrs. Milian to remove her belongings.

64.    Principal Womack and Mrs. Solano checked the cabinets in Plaintiff's new classroom and revealed some of the items Mrs. Perez left in the cabinets belonged to the school. They told Plaintiff she had to move the items that belonged to the school herself and put them in the hallway.

65.    This doubled Plaintiff's workload as she had to immediately move her personal items Mrs. Milian took out of the cabinets in her old room and move the school items Mrs. Perez left in the new classroom into the hallway.

66.    Plaintiff had to move a large number of items within a day, which created an unorganized, chaotic environment that further exacerbated the Plaintiff's symptoms.

67.    August 3, 2023- Plaintiff received her 2023-2024 classroom roster and realized Principal Womack did not loop her entire 2022-2023 class as promised, along with other discriminative and retaliatory discrepancies on her new classroom roster.

68.    Only 8 out of 19 students from Plaintiff's 2022-2023 class were on Plaintiff's 2023-2024 roster. Plaintiff received the eight remaining students because two were Gifted and Talented, and six were English as a Second Language (ESL) students. Plaintiff was the only English

Monolingual Teacher certified and qualified to teach ESL and gifted and talented students. Other non-black teachers were allowed to "loop" with their entire class in previous school years.

69.     August 3, 2023- Plaintiff met with Principal Womack and Spring ISD Area Superintendent, Mr. Martinez.

70.     During the meeting, Principal Womack and Mr. Martinez told the Plaintiff she did not receive her full roster from 2022-2023 because the campus needed to meet the student's needs, and the placements were based on the students' needs.

71.     Plaintiff's 2023-2024 roster included students with Behavior Intervention Plains (BIPS) who were not on her 2022-2023 roster. The BIP students added to Plaintiff's 2023-2024 roster were known for having violent behavior towards students and teachers.

72.     Plaintiff mentioned during the meeting that the roster change with added behavior issues could cause additional stress. One of the students added to Plaintiff's 2023-2024 roster was known for making racist remarks and shouting the n-word a lot during the 2022-2023 school year. During the 2022-2023 school year, he also threw and hit Mrs. Small, his Black/African American teacher, with a textbook in front of the class.

73.     August 3, 2023- Immediately after the meeting with Principal Womack and Dr. Martinez, three academically high-performing Black/African American male students and a non-black male student with no known behavior concerns were removed from Plaintiff's 2022-2023 roster. The only Black/African American male remaining on Plaintiff's roster was the BIP student who struggled academically.

74.     During the 2023-2024 school year, Plaintiff's son, Phoenix Davis, a student at Booker Elementary, where Plaintiff taught, was also subjected to discriminative and retaliatory actions. These actions include the dismissal of numerous concerns regarding testing integrity, refusal to

investigate matters of unfair treatment from teachers and staff, denial of lunch accommodation, crumbling his classwork in front of peers and throwing it in the trash, unfair treatment at the nurse's office after wetting himself in class, not contacting Plaintiff or her husband to inform them, making him change clothes in the restroom open to all students instead of the private restroom, and verbally reprimanding Plaintiff for checking on her son during her duty-free lunchtime and his recess time after a potentially humiliating circumstance.

75.    During the 2023-2024 school year, Principal Womack and campus administrators fostered a hostile work environment between Plaintiff and Phoenix's teacher, Ms. Senegal, through misunderstandings regarding testing procedures and campus parent-teacher protocols. As a result, Ms. Senegal started lying about Plaintiff in her emails to administrators. This was frustrating for Plaintiff and triggered her symptoms as the environment became increasingly hostile.

76.    Plaintiff's third-grade classroom was in the same hallway as her son's first-grade classroom. Principal Womack started monitoring Plaintiff's hallway and classroom more often in the morning and did not do this in previous school years. The monitoring became excessive. Principal Womack began to remove Plaintiff's son from her classroom during breakfast in the morning. This was never an issue during the 2021-2022 and 2022-2023 school years.

77.    September 25, 2023- Principal Womack fostered confusion and hostility on the second-grade team by not clarifying untrue statements about the Plaintiff while aware of the truth.

78.    September 27, 2023- Plaintiff was told to remove bean bags from Plaintiff's classroom that were allowed to stay in Plaintiff's classroom the entire 2022-2023 school year. Despite providing evidence that the bean bags were in compliance, Plaintiff was still asked to remove the

bean bags. Plaintiff mentioned she spent over $500 on the bean bags and other flexible classroom seating.

79.    During the 2023-2024 school year, Plaintiff asked for a reasonable accommodation for "At Bats" presentations during a PLC meeting due to Plaintiff's anxiety, ADHD, and PTSD symptoms.

80.    Spring ISD requested additional medical documentation and another formal reasonable accommodation request after Plaintiff had given sufficient medical documentation from Plaintiff's physician.

81.    Plaintiff did not ask to be excused or to not participate in the meeting but requested to participate in a different capacity. Principal Womack and campus administrators denied all Plaintiff's reasonable accommodation requests for "At-Bats" presentations for the 2023-2024 school year.

82.    Plaintiff was often subjected to humiliation and shaming for not being comfortable presenting during the meetings after requesting relief. Plaintiff notified campus administrators certain PLC meetings caused Plaintiff mental strife and triggered the symptoms of her medical diagnosis.

83.    October 25, 2025- Principal Womack lied about providing coverage for Plaintiff's planning and preparation time due to an ARD meeting scheduled during Plaintiff's planning time. Principal Womack was dishonest and made false statements about another teacher as to why she did not provide coverage for Plaintiff's planning time.

84.    March 6, 2024- Plaintiff experienced racial intimidation the day before the 2023-2024 Black History Month (BHM) Expo. The bulletin board displayed in front of the gym where the

Black History Month Expo is held each year was removed the day before the Black History Month Expo.

85.     Plaintiff was on the BHM committee and was not given notice the board was removed. Some of Plaintiff's materials were on the bulletin board, and Plaintiff had to search for her materials around the school when she noticed the board had changed. Plaintiff emailed campus administrators about her concern but did not receive a response.

86.     April-May 2024- Plaintiff was subjected to workplace bullying and a hostile work environment. Plaintiff reported a conflict to campus administrators between Plaintiff and Ms.Vega-Guiterrez, a biracial black-Hispanic female teacher on the third-grade team.

87.     Ms. Vega-Guiterrez had raised her voice at Plaintiff in an aggressive manner in front of the third-grade students. The incident alarmed the students, and Ms. Vega-Guiterrez told her students she did not care about what Plaintiff's class had to say

88.     The environment became hostile for both teachers and students. Plaintiff and her class were harassed on the playground when one of Ms. Vega-Guiterrez's students ran up to Plaintiff shouting, "Why are you trying to make our teacher lose her job?"

89.     Plaintiff's character was defamed and her reputation harmed as Ms. Vega-Guiterrez spread false rumors to staff and students about their conflict. Other teachers started making snide remarks to Plaintiff in reference to the conflict with Ms. Vega-Guiterrez.

90.     Campus administrators failed to respond to the conflict in a timely manner. It took 30 business days for an administrator to meet with Plaintiff and communicate their resolution for the dispute, which violates Spring ISD's Board Policy DIA (LOCAL).

91.     On April 9, 2024, Plaintiff reported a discrepancy about her 2022-2023 class roster and how it could affect the level of designation and incentive payout she would be awarded. The Spring ISD HR and administrators did not act urgently, and missed the May 3, 2024, cut-off to dispute any discrepancies on behalf of teachers for the Teacher Incentive Allotment.

92.     The dispute determined if Plaintiff would receive an Exemplary or Master designation, resulting in an allotment payout of $9,945 or $18,000. The designations last five years; within the five years, teachers are eligible for higher designations but never a lower level of designation. Texas teachers receive the allotment payout for the next five years regardless of their performance in the following years.

93.     Plaintiff experienced additional stress as her symptoms were triggered, especially feeling isolated and wanting to stay isolated, which affected Plaintiff's social and communication skills. Plaintiff almost always keeps to herself and doesn't talk to anyone; Plaintiff wasn't always like this. Plaintiff was once very social.

94.     May 2, 2024- During Plaintiff's summative review, AP Tezeno told Plaintiff that she would not be moved back to second grade or a primary grade level for the 2024-2025 school year.

95.     Plaintiff then applied for nine second-grade positions at six different schools in Spring ISD for an intra-district transfer before the transfer window closed. One of the schools had four second-grade positions available, and the assistant principal interviewed Plaintiff. Plaintiff is an experienced and exemplary teacher but was not hired for an intra-district transfer.

96.    May 13, 2024- The Principal at Cooper Elementary, Mrs. Garcia, responded to Plaintiff's email and application for intra-district transfer Plaintiff applied for on May 11. 2024 asking if Plaintiff's Principal knew about Plaintiff's intentions.

97.    Plaintiff responded that she was not in touch with Principal Womack because Principal Womack was on FMLA. Mrs. Garcia quickly responded, saying thank you, but the position had already been filled.  The job position was open as of July 1, 2024, when Plaintiff last checked Spring ISD's vacancies.

98.    May 20, 2024- Plaintiff emailed campus administrators about her job assignment for the 2024-2025 school year because Plaintiff was told that she would no longer be self-contained and would have to do a three-way split and possibly only teach ELAR.

99.    Plaintiff asked if the three-way split included Ms. Vega-Guiterrez. Plaintiff said she was not comfortable having Ms. Vega-Guitterez as a partner teacher because of the recent conflict and defamation.

100.    Plaintiff did not receive clarity about Ms. Vega-Guiterrez's position but remembered Dr. Hernandez-Olowabi told Plaintiff that no one would lose their job on the third-grade team. AP Tezeno told Plaintiff third-grade would remain a three-way split.

101.    June 3, 2024- As Plaintiff gathered signatures from campus administrators for her end-of-year checklist, Mrs. Shelly Gloria, a white-Caucasian female Reading Interventionist, made a comment that Plaintiff believed was racially motivated.

102.    Plaintiff mentioned looking for positions in other districts; most of the districts have a larger White-Caucasian demographic than Spring ISD, such as Klein ISD, Conroe ISD, Cy-Fair

ISD, and Humble ISD. Ms. Gloria said, "Now, don't go "mixing up" those kids over there in another district."

103.    Plaintiff believes this comment referenced Plaintiff's 2023-2024 Black History Month Project displayed at the expo. One of Plaintiff's displays focused on local and national school desegregation, Tyrone Raymond, Ruby Bridges, Brown v. Board of Education, and separate but equal issues during the 1960s era in Black History, hence the "Don't go mixing up the kids over there," comment.

104.    Plaintiff believes Mrs. Gloria took issue with her 2023-2024 project because Mrs. Gloria was one of the PreK teachers involved in the Black History Month Expo complaint against Plaintiff during the 2022-2023 school year.

105.    June 3, 2024- Plaintiff emailed campus administrators seeking clarity about Plaintiff's job assignment and classroom for the 2024-2025 school year. Plaintiff did not receive a response from campus administrators.

106.    Despite all of Plaintiff's achievements as a Spring ISD teacher from 2021-2024, Plaintiff was subjected to racial harassment and discrimination, disability discrimination, retaliation, workplace bullying, defamation, and a hostile work environment, and, therefore, constructively discharged.

107.    Spring ISD's position statement submitted to the EEOC contained many false and purposely misleading statements.

108.    June 25, 2024- Plaintiff resigned from Spring ISD, stating constructive dismissal.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

109.    On March 14, 2024, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), Charge No. 460-2023-06283.

110.    On September 26, 2024, the EEOC issued Plaintiff a Notice of Right to Sue.

111.    On November 11, 2024, the EEOC prepared a Charge of Discrimination, Charge No. 460-2025-00370. Prepared Charge No. 460-2025-00370 satisfies the EEOC's charge filing requirements. The Supreme Court has held that for a filing with the EEOC to be considered a charge, it must include the information required in the EEOC's regulations, *i.e.* the allegation and the charged party's name, and "it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 128 S. Ct. 1147 (2008)

112.    Plaintiff files this lawsuit in a timely manner within ninety (90) days of receiving her Notice of Right to Sue.

## **CAUSE OF ACTION**

## **RACIAL DISCRIMINATION**

Title VII 42 U.S.C. 2000(e), 1983, 1981, Texas Labor Code §21.051

113.    42 U.S.C. 2000(e), Section 1981, and Texas Labor Code §21.051 prohibit race discrimination and retaliation.

114.    A public employer is liable for violating Section 1981 through Section 1983 upon proof that they intentionally discriminated against the public employee plaintiff.

115.    Plaintiff was discriminated against regarding the terms and conditions of employment when considering differences in treatment between herself and one or more similarly situated non-African Americans when she was involuntarily reassigned and relocated for the 2023-2024 school year.

116.    Plaintiff states a cause of action for disparate-treatment discrimination because of Plaintiff's race under Title VII 42 U.S.C. 2000(e), 42 U.S.C. § 1981, through 42 U.S.C. § 1983, and Texas Labor Code §21.051 against Spring ISD in their official capacity based on the following adverse employment actions:

    (i)    Defendant's failure to accommodate Plaintiff's reasonable accommodation requests on July 5, 2023, July 28, 2023, October 3, 2023, March 5, 2024, and April 18, 2024, because of her race.

    (ii)    Plaintiff's involuntary job reassignment on June 5, 2023, because of her race.

    (iii)    Plaintiff's involuntary classroom relocation on July 21, 2023, because of her race.

    (iv)    Plaintiff's constructive termination on June 25, 2024, because of her race.

117.    To establish a prima facie case of discrimination, the plaintiff must prove that (1) they are a member of a protected class, (2) they were qualified for their position, (3) they were discharged or suffered some adverse employment action, and (4) they were treated less favorably than similarly situated members of the opposing class.

118.    Plaintiff is prepared to show that she (1) is a member of a class, Black/African-American, who is intended to be protected by the statute; (2) was qualified for the position, as stated in paragraph 8; (3) was subjected to adverse employment action in the form of involuntary reassignment and relocation, and (4) was treated less favorably than similarly situated white Caucasian and Hispanic teachers allowed desirable reassignments, accommodations, and classroom locations not afforded to Plaintiff.

119.    Defendant intentionally and consistently denied Plaintiff's requests for reasonable accommodations for job reassignment and classroom location, citing Defendant's contractual terms and policies that give Defendant authority to reassign and transfer Plaintiff at any time during the contract term.

120.    Plaintiff was informed numerous times by Defendant decision-makers that Defendant is not required to grant reasonable accommodation to a qualified employee if the request does not grant an undue hardship because Principals and other decision-makers have the autonomy to make decisions that are best for the campuses.

121.    Defendant's granting of autonomy absent regulation and accountability leaves room for Defendant's decision-makers to discriminate and violate constitutional rights and federal and state laws enacted for protected classes.

122.    Principal Womack's enforcement of Defendant's reassignment and transfer policy to reassign and relocate Plaintiff because of her race deprived Plaintiff of her rights to equal protection granted by the 14th Amendment and reasonable accommodations defined by the ADA.

123.    Plaintiff was deprived of equal protection and treated less favorably than similarly situated white Caucasian and Hispanic teachers who were allowed desirable reassignments, accommodations, and classroom locations not afforded to Plaintiff.

124.    Defendant's decision-makers intentionally discriminated against Plaintiff because of her race and engaged in the following discriminatory employment practices in violation of Title VII, 42 U.S.C. 1981, and Texas Labor Code §21.051:

   (i)    On October 25, 2022, information was withheld from Plaintiff but given to other similarly situated non-black teachers.

   (ii)   On November 1, 2022, Plaintiff was verbally reprimanded for not following the procedures of the withheld information.

   (iii)  During the 2022-2023 school year, Plaintiff reported concerns about second-grade behavior students being isolated from their peers while serving lunch detention every day.

   (iv)  Plaintiff agreed that lunch detention could be a consequence based on different situations and behaviors but considered the permanent daily consequence excessive and unethical.

   (v)   All students serving the daily solitary confinement-style lunch were black males except for one non-black Hispanic male.

(vi)   Plaintiff adjusted the seating arrangements at their assigned tables so the students could sit with their peers without behavior disruptions when she was assigned to lunch duty.

(vii)  Plaintiff was told her team disagreed despite her effective seating arrangements.

(viii) Principal Womack communicated to Plaintiff that she was outnumbered in votes by her team. They voted that the students would remain isolated at separate tables in the back of the cafeteria or be forced to sit with the bilingual classes.

(ix)   Plaintiff believed the consequence was unethical and mentioned it mirrored racial profiling and school-to-jail pipeline theories. Plaintiff mentioned rehabilitative solutions were considered more successful.

(x)    Plaintiff's second-grade team stated that sitting mono-lingual students at the bilingual lunch tables was a consequence because they could not communicate or understand them, so they were forced to be quiet. Not as an effort for them to bond or make new friends. The students were also forced to take restroom breaks with the bilingual classes after recess.

(xi)   Plaintiff was reprimanded for the times she changed the seating arrangements and had the office staff called on her by the bilingual team leader. Both principals and other staff arrived at the cafeteria to monitor Plaintiff's behavior.

(xii)  On February 6, 2023, Plaintiff participated in the protected activity of reporting racial harassment of racially offensive objects displayed in the glass cafeteria cases.

(xiii) On February 13, 2023, Plaintiff was informed that her complaint had been remedied. Plaintiff's racial harassment complaint was never remedied, and the display of the offensive objects was extended.

(xiv) On March 10, 2023, Plaintiff was verbally reprimanded for inquiring about the racially offensive objects displayed during the Black History Month Expo. After being verbally reprimanded for the Black History Month Expo, Plaintiff was told the PreK and second-grade teams had difficulties working with her and that her summative score could be affected by her behavior.

(xv) Principal Womack did not take corrective action by removing the racially offensive display and speaking with the offenders.

(xvi) The offenders that displayed the racially offensive display are other similarly situated non-black teachers.

(xvii) During the following 2023-2024 school year, Plaintiff experienced covert racial intimidation related to Black History Month celebrations.

(xviii)    The black-Hispanic interim principal took down the Black History Month bulletin board the day before the Black History Month Expo.

(xix) Plaintiff's materials were removed from the board without her knowledge, and she was told she had to search for them herself as they did not know who had them.

(xx) During the 2023-2024 school year, on more than one occasion, Plaintiff verbally reported racially discriminatory behavior of a non-black teacher directed at Plaintiff's black students to Principal Womack, but Plaintiff's concerns were dismissed.

(xxi) The similarly situated non-black teacher was not reprimanded and assigned to remain in second grade for the 2023-2024 school year.

(xxii) Plaintiff was involuntarily reassigned and relocated to a standardized testing grade level for the 2023-2024 school year.

24

(xxiii)    The teacher who occupied Plaintiff's new classroom also left her personal materials in her previous classroom over the summer.

(xxiv)    In July 2023, Plaintiff tried to get an early start moving into her new classroom and asked campus administrators if the previous teacher's items in Plaintiff's new classroom could be moved or consolidated so Plaintiff could have space to move her items in which would also create space in Plaintiff's previous classroom for the teacher occupying Plaintiff's old classroom for the 2023-2024 school year.

(xxv) Plaintiff mentioned she did not feel comfortable touching the other teacher's belongings.

(xxvi)    Plaintiff was told not to touch the other teacher's belongings, so Plaintiff did not and worked with the available storage space until the teacher moved her things out of Plaintiff's new classroom.

(xxvii)    As the start of the school year grew closer, Plaintiff asked about the teacher's items again and if campus administrators knew when the teacher would start moving. Plaintiff was told she could consolidate some items into a few cabinets, but Plaintiff was not comfortable moving another teacher's belongings. Plaintiff did not move the teacher's items.

(xxviii)    The teacher that previously occupied Plaintiff's new classroom is non-black.

(xxix)    On August 1, 2023- Principal Womack unlocked the cabinets in Plaintiff's previous classroom and allowed the non-black teacher moving into Plaintiff's previous classroom to remove Plaintiff's belongings.

(xxx) The non-black teacher moving into Plaintiff's previous classroom told Plaintiff Principal Womack accommodated her because of her medical condition, and August 1, 2023, was the only day her daughter could help her move, so Principal Womack unlocked the cabinets containing Plaintiff's belongings for her.

(xxxi)     Plaintiff did not receive this accommodation, although she asked.

(xxxii)     Campus administration gave the teacher moving out of Plaintiff's room a courtesy call regarding moving her belongings because Plaintiff had to move her belongings now that the other teacher had removed them from the cabinets.

(xxxiii)     Plaintiff did not receive a courtesy call before her belongings were removed and campus administrators had seen Plaintiff every day since the campus opened for the summer.

(xxxiv)     Both teachers moving into Plaintiff's old classroom and moving out of Plaintiff's new classroom were similarly situated, non-black teachers.

(xxxv)     Similarly situated non-black teachers were allowed to choose their grade-level reassignment and classroom location without a vacancy or need for their desired position for the 2023-2024 school year.

(xxxvi)     Defendants failed to accommodate Plaintiff's reasonable accommodation requests after Plaintiff submitted medical documentation to prove she is a qualified individual with a disability.

(xxxvii)     Plaintiff was denied reasonable accommodations approved for similarly situated non-black teachers.

(xxxviii)   One of the reasonable accommodations approved for a non-black teacher came at the expense of Plaintiff's privacy.

(xxxix)   One of the conditions of Plaintiff's forced reassignment and relocation was that Plaintiff would "loop" with her 2022-2023 class roster as it would make the transition easier due to Plaintiff's familiarity and success with her 2022-2023 class.

(xl)   8 out of 19 students from Plaintiff's 2022-2023 class roster were assigned to Plaintiff for the 2023-2024 school year.

(xli)   Multiple students with behavior intervention plans were added to Plaintiff's 2023-2024 class roster who were not on Plaintiff's 2022-2023 roster, including a violent racist student who physically assaulted his black teacher in front of the class of students and yelled n-word during the 2023-2024 school year.

(xlii)   Similarly situated non-black teachers were allowed to loop with their entire class roster or given the option to choose the students they looped with the next school year.

(xliii)   Three high-performing black male students and one high-performing non-black male student without behavior intervention plans were immediately removed from Plaintiff's 2023-2024 roster after she reported concerns about her 2023-2024 class roster.

(xliv)   Plaintiff was assigned to teach the Gifted and Students for the 2023-2024 school year. District policy states that Gifted and Talented students are required to be in the same classroom.

(xlv)   Two students with behavior plans had to be separated during the 2023-2024 school year. One is an academically high-performing gifted and talented student, while the other is academically low-performing and considered to be well below grade level.

(xlvi) The academically low-performing student was assigned to Plaintiff's class, and the academically high-performing Gifted and Talented student was assigned to a new biracial third-grade teacher, Ms. Vega-Guiterrez, despite it being against district policy.

(xlvii)    During the 2022-2023 school year, a Gifted and Talented student was required to be assigned to Plaintiff because he is also ESL, and Plaintiff was the only certified mono-lingual ESL teacher in second grade during the 2022-2023 school year.

(xlviii)    During the 2022-2023 school year, Plaintiff was informed that she could not receive the remaining four Gifted and Talented students in another class because it would not be fair for her to have both the ESL and Gifted and Talented students on her roster despite it being against district policy.

(xlix) Similarly situated non-black teachers were allowed to teach both ESL and Gifted and Talented students.

(l)    Principal Womack also assigned students from Plaintiff's 2022-2023 class to the new biracial teacher's roster that she told Plaintiff she believed to be brilliant during the 2022-2023 school year and would potentially be identified as Gifted and Talented during the 2023-2024 school year.

(li)    Plaintiff advocated for the non-black students to be identified as gifted and talented during the 2022-2023 school year by emailing district gifted and talented specialists and communicating with their parents.

(lii)    The students were identified as Gifted and Talented during the 2023-2024 school year, but neither were on Plaintiff's roster when they were identified as gifted and talented.

(liii)  Students from Plaintiff's 2022-2023 roster were not added to Plaintiff's 2023-2024 roster despite their parents submitting requests to the office at the beginning of the school year.

(liv)  One of the non-black students from Plaintiff's 2022-2023 roster cried during the morning for almost the first month of school and refused to enter the other teacher's class because she wanted to be assigned to Plaintiff again. The counselor had to take her to the office and speak with her most of those mornings to make her enter the other teacher's classroom.

(lv)  During April and May of 2024, Plaintiff, her son, and Plaintiff's students were subjected to a hostile work environment, workplace bullying, and defamation from the biracial third-grade teacher and others.

(lvi)  Plaintiff's concerns were not thoroughly investigated, and it took campus administrators 30 days to communicate a non-resolution to the hostile work environment bullying Plaintiff and her class experienced. Nothing came out of the investigation, and the biracial teacher was not reprimanded.

(lvii)  Plaintiff never received a response to the concerns she reported about the hostility her son was subjected to.

(lviii) Plaintiff was told she would most likely have to partner with the biracial teacher who bullied her for the 2024-2025 school year.

(lix)  Plaintiff objected and asked for another resolution that did not require her to partner with the teacher who bullied her. Plaintiff did not receive a response from campus administrators.

(lx)   Plaintiff was constructively discharged from her position on June 25, 2024.

### Establishing Pretext for Racial Discrimination

125.   On February 13, 2023, Principal Womack emailed Plaintiff to communicate the resolution of Plaintiff's racial harassment complaint. Principal Womack stated that she spoke with the PreK team about Plaintiff's concern and said they agreed to be more cognizant moving forward.

126.   On March 8, 2023, the PreK team informed Plaintiff that Principal Womack never spoke to them about the display and that it was their first time hearing the display was considered racially offensive to Black African-Americans.

127.   On March 10, 2023, during the meeting about Plaintiff's professional demeanor, Principal Womack argued that she never told Plaintiff that she had spoken with the PreK team about the display. During the meeting, Plaintiff had to recover the February 13th email to refute Principal Womack's claims.

128.   Principal Womack changed her story after being confronted with the February 13th email. She said she never agreed with Plaintiff's "opinion" about the display and that Plaintiff misinterpreted her message.

129.   A pretext for discrimination is evident in Principal Womack's shifting explanations during our March 10, 2023, meeting about the racially offensive display, the lack of investigation per Spring ISD's Board Policy DIA (LOCAL), and the differential treatment Plaintiff experienced after the March 10, 2023, meeting.

130.    A pretext for discrimination is evident in Principal Womack's explanation for the adverse action of reassigning to a standardized testing grade level. Principal Womack repeatedly told Plaintiff she was needed in third-grade because of her experience and certifications. Plaintiff was the only experienced monolingual general education teacher assigned to teach third-grade during the 2023-2024 school year.

131.    Principal Womack stated her decision was based on the scholars' needs. The other two third-grade monolingual general education teachers were non-certified first-year teachers. Principal Womack had other experienced staff members she could have reassigned to third-grade to fill the other two vacancies, including the teacher she vetted before Plaintiff in April 2023 but chose to place in Resource instead.

132.    On June 5, 2023, Principal Womack stated she would allow Plaintiff to remain in her 2022-2023 assigned classroom in the second-grade hallway to assist with the transition to third grade.

133.    Principal Womack's explanation for no longer offering Plaintiff her 2022-2023 classroom in an email communication on July 17, 2023, does not align with the 2023-2024 classroom assignments of non-black teachers on hallways not assigned to their grade level.

134.    Plaintiff sues Defendants for racial discrimination under 42 U.S.C. 2000(e), §1981 through §1983.

## FAILURE TO ACCOMMODATE

ADA 42 U.S.C. 12112 b(5)(A), Texas Labor Code §21.128

135.    42 U.S.C. 12112 and Chapter 21 of the Texas Labor Code prohibit disability discrimination and retaliation.

136.    Disability discrimination includes not making reasonable accommodations. A public employer is liable for violating 42 U.S.C. 12112 b(5)(A) and Texas Labor Code §21.128 if they fail to make reasonable accommodations to a known physical or mental disability of a qualified employee unless the covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such entity. *42 U.S.C. 12112 b(5)(A)*

137.    Plaintiff states a cause of action for failure to accommodate under 42 U.S.C. 12112 b(5)(A) and Texas Labor Code §21.128 against Spring ISD in their official capacity based on the following adverse employment actions:

(i)     Defendant's failure to accommodate Plaintiff's reasonable accommodation requests on July 5, 2023, July 28, 2023, October 3, 2023, March 5, 2024, and April 18, 2024, because of her race.

(ii)    Plaintiff's involuntary job reassignment on June 5, 2023, because of her race.

(iii)   Plaintiff's involuntary classroom relocation on July 21, 2023, because of her race.

(iv)    Plaintiff's constructive termination on June 25, 2024, because of her race.

138.    To establish a prima facie case for failure to accommodate, the plaintiff must prove that (1) they are an individual with a disability within the meaning of the ADA/ADAA; (2) that an

employer covered by the statute had notice of the disability; (3) that with or without reasonable accommodation they can perform the essential functions of the position; and (4) that the employer refused to make such accommodations. *Davis v. Cty. of Grapevine, 188 S.W.3d 758*

139.    Plaintiff is prepared to show that she (1) was an employee with a disability as defined by the ADA/ADAA; (2) that Defendant is an employer covered by the statute and was given notice of Plaintiff's disability subjected to adverse employment action in the form of involuntary reassignment and relocation; (3) was qualified to perform the essential functions of the position with or without reasonable accommodation, as stated in paragraphs 8-10; and (4) that Defendant refused to make reasonable accommodations by denying all of Plaintiff's reasonable accommodation requests.

140.    Once the plaintiff has made out a prima facie case for discrimination, "the burden then shifts to the employer to show that it could not reasonably accommodate the Plaintiff's request.

141.    Defendant's decision-makers discriminated against Plaintiff by failing to accommodate Plaintiff because of her race and engaged in the following discriminatory employment practices in violation of 42 U.S.C. 12112 b(5)(A) and Texas Labor Code §21.128:

   (i)    Plaintiff's request did not impose an undue hardship on Defendant's operations because Principal Womack vetted an experienced and qualified ESL teacher for the third-grade position a month before she forced Plaintiff to change grade levels and classroom location. The qualified and experienced teacher was reassigned to her current position as the campus Resource teacher during the summer of 2023.

(ii)   Defendant intentionally and consistently denied Plaintiff's requests for reasonable accommodations for job reassignment and classroom location, citing Defendant's contractual terms and policies that give Defendant authority to reassign and transfer Plaintiff at any time during the contract term.

(iii)  Plaintiff was informed numerous times by Defendant decision-makers that Defendant is not required to grant reasonable accommodation to a qualified employee if the request does not grant an undue hardship because Principals and other decision-makers have the autonomy to make decisions that are best for the campuses.

(iv)   Principal Womack's enforcement of Defendant's reassignment and transfer policy deprived Plaintiff of her right to reasonable accommodations. Plaintiff was treated less favorably than similarly situated white Caucasian and Hispanic teachers who were allowed desirable reassignments, accommodations, and classroom locations not afforded to Plaintiff.

(v)    Defendant's failure to accommodate reasonable requests subjected Plaintiff to humiliation, shaming, and embarrassment during PLC meetings.

## **Establishing Pretext for Disability Discrimination**

142.    In Defendant's Position Statement to the EEOC on May 9, 2024, Defendant provided false information about Plaintiff's employment history with the district.

143.    In Defendant's Position Statement to the EEOC on May 9, 2024, Defendant falsely stated Plaintiff only worked at Booker Elementary with Principal Womack as her supervisor during her 2010-2016 years of service with Spring ISD.

144.    Defendant also falsely stated that Plaintiff only taught fourth and third grade during Plaintiff's initial years of service from 2010-2016 and intentionally omitted Plaintiff's years of experience teaching second grade in Defendant's school district.

145.    Plaintiff worked at two other schools during her 2010-2016 tenure with Spring ISD.

146.    During the 2014-2015 school year, Plaintiff taught second-grade at Clark Primary Elementary School with Principal Mensah.

147.    During the 2015-2016 school year, Plaintiff taught second-grade at Burchett Elementary School with Principal Walker.

148.    Plaintiff transferred to Clark Primary Elementary School because Plaintiff no longer wanted to teach standardized testing grade levels, and Clark Primary Elementary was a PreK-2nd grade campus only. Plaintiff assumed this would guarantee she would not have to teach a standardized testing grade level.

149.    During the 2014-2015 school year, Principal Mensah asked Plaintiff to move from Clark Primary to Clark Intermediate School to teach third-grade for STAAR test preparation. Plaintiff asked if she could stay in second-grade and was allowed to stay in second-grade but was treated unfairly after declining the offer.

150.    Plaintiff was initially hired by Principal Harding at Burchett Elementary School for the 2015-2016 school year. Principal Harding was Plaintiff's Elementary School Principal at Bammel Elementary School when she was a child. Principal Harding told Plaintiff during her interview that she would not require Plaintiff to involuntarily move to a standardized testing grade while working for her.

151.    Principal Harding retired before the start of the 2015-2016 school year and was replaced by Principal Walker.

152.    Plaintiff informed Principal Walker of her terms with Principal Harding, and he agreed not to move Plaintiff to a standardized testing grade level.

153.    In December 2015, Principal Walker informed Plaintiff she had to move to third-grade when they returned from the holiday break.

154.    Plaintiff had an adverse response to the reassignment and was diagnosed with depression because of her third-grade job reassignment in February 2016.

155.    In 2016, Principal Walker also relocated Plaintiff from a classroom with windows and natural sunlight to a room without windows or natural light just as Principal Womack relocated

Plaintiff from a classroom with windows and natural light to a room without windows or natural light in 2023.

156.    Plaintiff resigned from Defendant's school district in May 2016 because of her depression diagnosis stemming from her job reassignment mid-school year.

157.    Plaintiff informed Principal Womack about her 2014-2016 reassignment experiences with Principal Mensah and Principal Walker when she asked Principal Womack to allow her to remain in second-grade for mental health reasons. Principal Womack was unmoved by Plaintiff's plea.

158.    A pretext for disability discrimination is evident in Defendant's omission of Plaintiff's 2014-2016 years of service teaching second-grade in Defendant's school district.

159.    Plaintiff sues Defendants for disability discrimination under 42 U.S.C. 12112 b(5)(A) and Texas Labor Code §21.128.

## RETALIATION

42 SC 2000e, 42 U.S.C. § 1981, Texas Labor Code §21.051, 42 U.S.C. § 12203

160.    Title VII 42 USC 2000e, Section 42 U.S.C. § 1981, Texas Labor Code §21.051, and ADA 42 U.S.C. § 12203(a) prohibit retaliation.

161.    A public employer is liable for violating Title VII 42 USC 2000e, Section 42 U.S.C. § 1981, Texas Labor Code §21.051, and ADA 42 U.S.C. § 12203(a) upon proof that they discriminated against an individual "because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

162.    Plaintiff states a cause of action for retaliation because Plaintiff participated in the protected activities of reporting racial harassment, reporting unlawful use of teacher planning time, requesting reasonable accommodations, and filing an EEOC charge under Title VII 42 USC 2000e, Section 42 U.S.C. § 1981, Texas Labor Code §21.051, and ADA 42 U.S.C. § 12203(a) against Spring ISD in their official capacity based on the following adverse employment actions:

(i)    Defendant's failure to accommodate Plaintiff's reasonable accommodation requests on July 5, 2023, July 28, 2023, October 3, 2023, March 5, 2024, and April 18, 2024, because of her race.

(ii)    Plaintiff's involuntary job reassignment on June 5, 2023, because of her race.

(iii)    Plaintiff's involuntary classroom relocation on July 21, 2023, because of her race.

(iv)   Plaintiff's constructive termination on June 25, 2024, because of her race.

163.   To establish a prima facie case of retaliation, the plaintiff must prove that (1) they participated in a protected activity, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action.

164.   Plaintiff is prepared to show that she (1) participated in the protected activities of reporting racial harassment, reporting unlawful use of teacher planning time, requesting reasonable accommodations, and filing an EEOC charge; (2) that she suffered adverse employment actions; (3) and that a causal link existed between the protected activity and the adverse action.

165.   Defendant's decision-makers retaliated against Plaintiff because she participated in protected activities and engaged in the following discriminatory employment practices in violation of Title VII 42 USC 2000e, Section 42 U.S.C. § 1981, Texas Labor Code §21.051, and ADA 42 U.S.C. § 12203(a):

(i)    Immediately after Plaintiff was verbally reprimanded on March 10, 2023, Plaintiff was subjected to increased monitoring.

(ii)   Plaintiff had some of her printing privileges revoked, and workroom staff members were instructed to place Plaintiff's printing request forms in Principal Womack's box.

(iii)  Plaintiff could no longer request copies of activities she previously had printed for most of the school year.

(iv) The increased monitoring was a trigger for Plaintiff due to PTSD and trauma because of stalkers and hackers. Plaintiff purchased new printers, ink, and paper to print activities.

(v) This rule did not affect other teachers until the next school year, but Plaintiff does not believe the other teachers were subjected to having their materials placed in the Principal's box to be reviewed.

(vi) Plaintiff was forced to change grade levels and "Loop" with her 2022-2023 class roster from second-grade to third-grade for the 2023-2024 school year.

(vii) Plaintiff was not allowed to remain in her 2022-2023 classroom to alleviate stress from the reassignment as previously promised.

(viii) Plaintiff experienced increased monitoring and scrutiny after requesting reasonable accommodations for PLC.

(ix) The campus math coach would stay in Plaintiff's classroom after Plaintiff and her students left and take pictures of Plaintiff's student's journals.

(x) Plaintiff received an unjust rating for Domain 3: Classroom Environment.

(xi) Principal Womack and other campus decision-makers used Plaintiff's classroom management and environment strategies as a model and implemented a schoolwide positive behavior management strategy modeled after Plaintiff's the next school year.

(xii) Plaintiff's rating is considered good but not in alignment with the complimentary responses she received from campus decision-makers and staff along with having her strategies used as a model for the entire school.

(xiii) Plaintiff's 2023-2024 included students with behavior intervention plans that were not on Plaintiff's roster the prior school year.

(xiv) Plaintiff spent over $500 on flexible seating in her classroom and was told she could no longer have the items in her classroom. However, the tags indicated they complied with safety regulations. Plaintiff was previously allowed to keep the items in her classroom for the entire 2022-2023 school year.

(xv)  Plaintiff's rating affected her incentive bonus and designation for the next five years.

(xvi)  Plaintiff currently receives a $9,900 incentive payout instead of an $18,000 incentive payout. Plaintiff only needed an additional point to receive the $18,000 bonus.

(xvii) Defendant's inaction to investigate Plaintiff's concerns regarding hostile environment, workplace bullying, and incentive pay discrepancies.

166.    Plaintiff sues Defendants for retaliation under Title VII 42 USC 2000e, Section 42 U.S.C. § 1981, Texas Labor Code §21.051, and ADA 42 U.S.C. § 12203 (a).

## HOSTILE WORK ENVIRONMENT

Title VII 42 U.S.C. 2000(e), 1981, Texas Labor Code §21.051

167.    42 U.S.C. 2000(e), Section 1981, and Texas Labor Code §21.051 prohibit intolerable working conditions.

168.    A public employer is liable for non-supervisory employees or non-employees over whom it has control for violating Title VII 42 U.S.C. 2000(e), 1981, and Texas Labor Code §21.051 if it knew, or should have known about the harassment and failed to take prompt and appropriate corrective action.

169.    Defendant failed to take necessary action to prevent or correct Plaintiff's complaints of ongoing harassment and hostility. Defendant's decision-makers knowingly fostered a hostile work environment by allowing and engaging in the following employment practices in violation of Title VII 42 USC 2000e, Section 42 U.S.C. § 1981, ADA, and Texas Labor Code §21.051:

(i)    On April 3, 2024, Plaintiff reported a conflict to campus administrators between Plaintiff and Ms.Vega-Guiterrez, a biracial black-Hispanic female teacher on the third-grade team.

(ii)    It took 30 business days to meet with an administrator to communicate their resolution for the dispute, which violates Spring ISD's Board Policy DIA (LOCAL).

(iii)    During the 30-day waiting period, Ms. Vega-Guiterrez's behavior became increasingly hostile as she continued to mistreat Plaintiff's students, spread lies about Plaintiff to staff members and students, and told students and staff Plaintiff was trying to make her lose her job.

(iv)  Coworkers began making subliminal comments referencing the conflict between Ms. Vega and myself.

(v)  Plaintiff mentioned that she felt her reputation and character were purposefully defamed.

(vi)  Plaintiff's concerns were not significant enough to address.

170.  Plaintiff sues Defendants for hostile work environment under 42 U.S.C. 2000(e), Section and Texas Labor Code §21.051.

## SEXUAL HARASSMENT- STALKING
### Title IX of the Education Amendments of 1972

171.  Title IX of the Education Amendments of 1972 prohibits sexual harassment in the form of stalking.

172.  Title IX Final Rule defines sexual harassment broadly to include any of three types of misconduct on the basis of sex, all of which jeopardize the equal access to education that Title IX is designed to protect: Any instance of quid pro quo harassment by a school's employee; any unwelcome conduct that a reasonable person would find so severe, pervasive, and objectively offensive that it denies a person equal educational access; any instance of sexual assault (as defined in the Clely Act), dating violence, domestic violence, or stalking as defined in the Violence Against Women Act (VAWA).

173.  The Office of Violence Against Women defines stalking as engaging in a course of conduct directed at a specific person that would cause a reasonable person to fear for his or her safety or the safety of others or suffer substantial emotional distress.

174.    Schools must respond promptly to Title IX sexual harassment in a manner that is not deliberately indifferent, which means a response that is not clearly unreasonable in light of the known circumstances. Schools have the following mandatory response obligations: - Schools must offer supportive measures to the person alleged to be the victim (referred to as the "complainant").

175.    Defendant decision-makers neglected their duty of care by not responding to Plaintiff's stalking and hacking concerns that affected the laptop Defendant assigned to Plaintiff for the 2022-2023 school year, which violates Title IX.

176.    Plaintiff sues Defendants for sexual harassment- stalking under Title IX.

## CONSTRUCTIVE DISCHARGE
Title VII 42 U.S.C. 2000(e), Section 1981, ADA, Texas Labor Code §21.051

177.    42 U.S.C. 2000(e), Section 1981, and Texas Labor Code §21.051 prohibit intolerable working conditions.

178.    A public employer is liable for violating 42 U.S.C. 2000(e), Section 1981, the ADA, and Texas Labor Code §21.051 upon proof that the working conditions were so intolerable that a reasonable person in the employee's position would have felt compelled to resign.

179.    Plaintiff states a cause of action for constructive discharge under Title VII 42 U.S.C. 2000(e), 42 U.S.C. § 1981, the ADA, and Texas Labor Code §21.051 against Spring ISD in their official capacity based on the following adverse employment actions:

(i)    Defendant's failure to accommodate Plaintiff's reasonable accommodation requests on July 5, 2023, July 28, 2023, October 3, 2023, March 5, 2024, and April 18, 2024, because of her race.

(ii)    Plaintiff's involuntary job reassignment on June 5, 2023, because of her race.

(iii)    Plaintiff's involuntary classroom relocation on July 21, 2023, because of her race.

(iv)    Defendant's failure to investigate Plaintiff's complaints of hostile environment and workplace bullying.

180.    Defendant's decision-makers fostered a hostile work environment and neglected their duty of care by engaging in the following discriminatory employment practices in violation of Title VII, 42 U.S.C. 1981, the ADA, and Texas Labor Code §21.051:

(i)    Defendant treated others outside of Plaintiff's protected race class favorably in situations Plaintiff was treated unfavorably.

(ii)    Defendant excessively monitored Plaintiff after verbally reprimanding Plaintiff on March 10, 2023, which led to Plaintiff purchasing a printer and supplies.

(iii)    The increase in monitoring triggered Plaintiff's medical symptoms.

(iv)    Defendant risked Plaintiff's mental health and well-being when Defendant denied Plaintiff's reasonable accommodation request to remain a second-grade teacher for at least two years.

(v)    Defendant risked Plaintiff's mental health and well-being when Defendant denied Plaintiff's reasonable accommodation request to remain in the classroom with large windows that let in a lot of natural light.

(vi)   June 2023, Defendant denied Plaintiff's request to transfer to other schools with second-grade vacancies.

(vii)  Defendant stopped allowing Plaintiff to use items compliant with safety regulations in her classroom.

(viii) Defendant risked Plaintiff's mental health and well-being when Defendant denied Plaintiff's reasonable accommodation request to participate in a different capacity for role-playing presentations during PLC meetings.

(ix)   Defendant took thirty days to investigate a hostile work environment and workplace bullying complaint that affected Plaintiff and students.

(x)    Defendant did not respond or remedy Plaintiff's complaint about the slander of Plaintiff's character that resulted from workplace bullying. Children Plaintiff had known for years began to turn on Plaintiff and became hostile towards Plaintiff's students. Staff members made smug remarks about rumors surrounding workplace bullying.

(xi)   Defendant suggested Plaintiff partner with the teacher who bullied her for the next school year. Plaintiff asked if she could continue to work within the same capacity without a partner, but Plaintiff's request was denied. Plaintiff asked for alternative solutions to the partner teacher arrangement, but Plaintiff did not receive a response to her requests.

(xii)  Defendant did not respond or investigate Plaintiff's complaints about the mistreatment of Plaintiff's son.

(xiii) May 2024, Plaintiff applied for nine second-grade intra-district job positions at six different campuses within Defendant's district but was not hired. Plaintiff is a highly qualified, exemplary-rated teacher without any disciplinary issues within Plaintiff's ten years of teaching experience.

181.    Plaintiff sues Defendants for constructive discharge under Title VII 42 U.S.C. 2000(e), 42 U.S.C. § 1981, the ADA, and Texas Labor Code §21.051.

## DAMAGES

182.    As a result of Defendant's discriminatory and retaliatory conduct outlined above, Plaintiff suffered economic and noneconomic damages. As a result of Defendant's unlawful actions, Plaintiff seeks to recover the following damages:

(i)     Past and future lost wages and benefits, including back and front pay and other economic damages;

(ii)    Past and future lost wage and benefit increases, lost bonuses, missed professional opportunities, and lost career and professional advancement;.

(iii)   Mental anguish, irritation, and emotional distress;

(iv)    Loss of enjoyment of life, harm to personal and professional reputation, loss of standing in the community, pain and suffering, humiliation and embarrassment;

(v)     Actual and compensatory damages;

(vi)    Incidental and consequential damages;

(vii)   Attorney fees and Court costs;

(viii) A judgment to compensate pro se litigants;

(ix)   Pre-judgment and post-judgment interest on all sums awarded as permitted by law;

(x)    All other damages to be established.

## PRAYER

183.    WHEREFORE, Plaintiff respectfully prays that this complaint be deemed good and sufficient and that this Court enter judgment in favor of Plaintiff granting Plaintiff all relief available at law and equity, and including actual and consequential damages, economic and noneconomic damages, attorney fees, court costs, pro se litigant costs, pre and post judgment interest, and any other relief as the Court deems appropriate.

## DEMAND FOR JURY

Plaintiff demands a trial by jury on all issues and causes of action

**RESPECTFULLY SUBMITTED**, this the 23rd day of December, 2024.

*India Davis*

India Mitchell Davis- Pro Se
13906 Eastmoore Court
Houston, TX 77014
Telephone: 281-753-2532
Email: India.smw@outlook.com
Texas Driver's License: xxxxx697
Social Security Number: xxx-xx-x849